**UNITED STATES of America, Appellee,**

v.

**John Christopher DOYLE, Appellant.**

**No. 556, Docket 29750.**

United States Court of Appeals Second Circuit.

Argued June 10, 1965.

Decided June 28, 1965.

Certiorari Denied Oct. 11, 1965.

See 86 S.Ct. 89.

Abram Chayes, Washington, D. C. (David Goldstein, Jacob D. Zeldes, Bridgeport, Conn., Arthur H. Christy, Carl F. Trunk, Jr., New York City, on brief), for appellant.

Herbert Edelhertz, New York City (Jon Newman, U. S. Atty., for the District of Connecticut, Victor C. Woerheide, Doris R. Williamson, Joseph Shortall, Attys., Washington, D. C.), for appellee.

Before WATERMAN, FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge.

On July 2, 1962, a grand jury in the District Court for Connecticut filed an eleven-count indictment against appellant Doyle and three other defendants, Sherwood, Berman, and Korn, charging violations of the Securities Act of 1933 in connection with the offer and sale of stock of Canadian Javelin, Ltd. Counts 1, 2 (dismissed on the Government's motion independently of the proceedings later recounted), 6, 7, 8, 9 and 10 alleged use of the mails in the fraudulent or manipulated advertising or sale of securities in violation of 15 U.S.C. § 77q at various dates between July and late September, 1957. Counts 3, 4 and 5 charged use of the mails to sell unregistered shares of Canadian Javelin on July 10, 23, and 31, 1957, in violation of 15 U.S.C. § 77e(a). Count 11 charged a conspiracy to defraud the United States by impeding the SEC in protecting investors and to violate 15 U.S.C. §§ 77e(a) and 77q. The conspiracy was alleged to have begun prior to January 1, 1955 and to have continued until about July 1, 1958; the overt acts were those forming the basis for the ten substantive counts plus ten others, the last on September 27, 1957.

On the Government's request the indictment was immediately ordered to be impounded. Although the reason was not of record, there is no dispute that it was because Sherwood and Berman were outside the United States and the Government feared that disclosure would prevent a return which otherwise might shortly occur. The Government states its initial intention was to continue the impounding only for a few months. However, in late August, 1962, a Washington attorney, now deceased, called at the Department of Justice and presented papers purporting to show that the SEC had entered into an agreement with a New York lawyer, also representing Doyle, "which was inconsistent with any prosecution of defendant Doyle in connection with the distribution or sale of the stock of Canadian Javelin, Ltd., prior to July 1, 1958." The Department began a detailed inquiry into this alleged agreement, which lasted for many months.

The indictment remained impounded, the reason for the continuation of this beyond early September, 1962, being, according to the Department, the necessity of resolving the issue of the alleged commitment by the SEC which Doyle had raised. About April 16, 1963, the Department made a determination to proceed with the prosecution, and on April 22, on motion of the Government, Judge Anderson ordered that the indictment be released on April 24. The Department having courteously informed a second New York lawyer representing Doyle that a decision had been made to go forward, he and the two previously mentioned made telephone calls to the Department which, as said in the affidavit of the Chief of the Fraud Section, "initiated a chain of events leading to the Government's request" that the indictment remain impounded, as it did until August 6, 1963. Appellant concedes that "from April 23, 1963 to August 6, 1963, when the indictment was unsealed, the delay in unsealing was at the request of Mr. Doyle or his attorneys." Although the Government does not allege a similar express request prior to April 23, 1963, it claims, quite reasonably, to have thought that release of the indictment would have been at odds with the investigation it was conducting at Doyle's instance, and the second New York attorney conceded, in an affidavit to the district court, "in candor I must also say that by presenting the Department with evidence of a commitment I hoped they would hold up whatever it was they were doing, that is, if they were still considering prosecution that they give up the idea or if there was an indictment, that it be dismissed."

After making various motions Doyle pleaded not guilty to all counts, as the other defendants also did. All moved, pursuant to F R.Cr.P. 12(b), that the indictment be dismissed on the grounds that, because of the long impounding,

the prosecution was barred by the five-year statute of limitations, 18 U.S.C. § 3282, they had been denied the right to a speedy trial guaranteed by the Sixth Amendment, and there had been unnecessary delay in bringing them to trial within F.R.Cr.P. 48(b). Judge Clarie granted the motions of Sherwood, Berman and Korn, because of the long delay in unsealing the indictment after the fall of 1962 for reasons unrelated to the prompt obtaining of custody, see F.R.Cr.P. 6(e). However, the court denied Doyle's motion, finding that the sealing of the indictment from July 2 to August 23, 1962, to obtain custody of Sherwood and Berman was reasonable [1] and that thereafter "the continued sealing was materially contributed to and caused by the defendant's own efforts."

During the fall and winter of 1964, many further motions relating to Doyle were decided. At a pretrial hearing on February 2, 1965, Judge Clarie announced he reluctantly would grant a request by Doyle, consented to by the Government, for an adjournment until the next day to enable counsel to agree on certain dates on which the evidence would be focused, "with the understanding that there will be no further continuance in this case for any reason whatsoever." When counsel appeared the next morning, Doyle's trial counsel, a Connecticut attorney of wide experience, announced "there is going to be a change of plea in our case, John Doyle. We would like to change the plea." After interrogating Doyle, Judge Clarie inquired whether "the defendant is to be put to plea on all counts?" The United States Attorney responded that the changed plea was to be only to Count 4, relating to a sale of 50 unregistered shares on July 23, 1957, and that "the Government will address itself to the remaining counts at the time of disposition." After further allocution, the judge authorized withdrawal of the not

1. It should be noted that on August 23, 1962, the statute of limitations had not run on Counts 9, 10 and 11 (the conspiracy count).

guilty plea on Count 4 and Doyle pleaded guilty on that count. The court asked "what comment does counsel care to make concerning a trial of the remaining counts of the indictment," the United States Attorney responded with the same formula as before, the court inquired whether this meant that "the Government contemplates a dismissal or nolle of the remaining counts," and the prosecutor answered "Yes."

On May 3, Doyle appeared for sentence. After extended argument by his attorneys, of which more hereafter, the judge sentenced him to pay a $5,000 fine and to be committed to the custody of the Attorney General for three years, with execution of the prison sentence to be suspended after three months. The Government then moved to dismiss the remaining counts, and this was granted. At his attorneys' request Doyle was given until May 24 to arrange his affairs. On May 12 he filed a notice of appeal to this court, and also moved in the district court for modification of his sentence. At a hearing on May 17, the judge denied motions for leave to see the probation report and for bail pending the appeal; the motion for modification of sentence was not pressed because of the appeal. Later this court denied a motion by the Government to dismiss the appeal as frivolous and granted bail, but set an expedited schedule for hearing.

The points sought to be raised on appeal, where still another attorney represented Doyle at argument, fall into two categories.[2] One concerns the delay in unsealing the indictment, under the not unrelated rubric of the five-year statute of limitations, 18 U.S.C. § 3282, and the provisions of the Sixth Amendment and F.R.Cr.P. 48(b) as to speedy trial. The other goes to matters concerning sentence. We do not believe the substantive questions in the first category can be reached. And even if we were to make the assumption—in all likelihood unduly

charitable—that the claims with respect to sentence, if established, would fall within the narrow range where a federal appellate court may direct resentence, see United States v. Wiley, 267 F.2d 453 (7 Cir. 1959), we find not the slightest merit in those here asserted.

## I.

The cases are legion that "[a] plea of guilty to an indictment is an admission of guilt and a waiver of all non—jurisdictional defects." United States v. Spada, 331 F.2d 995, 996 (2 Cir.), cert. denied, 379 U.S. 865, 85 S.Ct. 130, 13 L.Ed.2d 67 (1964), and cases cited; United States ex rel. Boucher v. Reincke, 341 F.2d 977, 980–981 (2 Cir. 1965). Although failure of the indictment to charge an offense may be treated as jurisdictional, United States v. Cook, 84 U.S. (17 Wall.) 168, 21 L.Ed. 538 (1872), held that an indictment states an offense even though the crime alleged appears to be barred by limitation. In United States v. Parrino, 203 F.2d 284, 286–287 (2 Cir. 1953), this court, speaking through Judge Learned Hand, applied the Cook case so as to prevent relitigation of the issue of limitations after a plea of guilty. Pate v. United States, 297 F.2d 166 (8 Cir.), cert. denied, 370 U.S. 928, 82 S.Ct. 1569, 8 L.Ed.2d 507 (1962), followed the same rule with respect to a claim of denial of speedy trial in violation of the Sixth Amendment. We recognize that the Criminal Rules contemplate that the issue of speedy trial may be raised by pretrial motion, F.R.Cr.P. 48(b), and that a few courts have allowed limitations questions to be considered under Rule 12(b) (1) before trial, e. g., United States v. Zavin, 190 F.Supp. 393 (D.N.J.1961). In our view, the effect of a plea of guilty does not depend on whether an issue sought to be pressed on appeal or in collateral attack might have been, or was in fact, properly raised in advance of trial. An unqualified plea of guilty, legitimately

2. We reject as not meriting discussion a claim that Count 4 did not charge an offense. See McDaniel v. United States, 343 F.2d 785 (5 Cir. 1965).

obtained and still in force, bars further consideration of all but the most fundamental premises for the conviction, of which the subject—matter jurisdiction of the court is the familiar example. The claims here asserted have nothing of this quality.[3]

Appellant argues that this rule runs counter to sound principles of judicial administration since, if a defendant is willing to rely on his ability to convince an appellate court of the validity of his rejected claims as to delay, a trial on the merits ought not be required. The premise is sound enough but the conclusion does not follow. There are a number of ways to deal sensibly with such a case without departing from the principle of Parrino. A plea expressly reserving the point accepted by the court with the Government's consent[4] or a stipulation that the facts are as charged in the indictment are two; failing either of these, the defendant can simply stand on his not guilty plea and put the Government to its proof without developing a case of his own.

Doyle contends that however the matter might otherwise stand, a conclusion favorable to him is compelled by Jaben v. United States, where the Eighth Circuit permitted the defendant who had pleaded *nolo contendere* to assert on appeal a claim of limitations as to which the district court had denied a motion to dismiss, 333 F.2d 535 (8 Cir. 1964), and the Supreme Court affirmed the conviction without discussion of the point,

381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965); indeed, Doyle's appellate counsel urged in argument that the Government must have conceded this in the Supreme Court. The contention is rather swiftly answered by examination of the record—which was not brought to our attention by counsel for either side. For this shows that Jaben pleaded *nolo* on the express condition "that the defendant will then have an opportunity to have the question as to whether the said count is barred by the statute of limitations decided upon by the Eighth Circuit Court of Appeals or by the Supreme Court, and that the plea of *nolo contendere* is not to preclude the defendant from taking an appeal on the issue at that time." It is thus unnecessary to consider the other possible grounds of distinction which the Government needlessly urged.

■ Moreover, even if Cook and Parrino do not mean what we think they mean, we would nevertheless decline to consider Doyle's limitation and Sixth Amendment claims on the facts of this case. Even if such claims are not waived by pleas of guilty *simpliciter*, a defendant advised by counsel can agree so to waive them, and the circumstances compel the conclusion that Doyle did precisely that.

A few more facts round out the picture. On the day of sentence, Doyle's trial counsel began by recalling that "as you well know, there was plenty of activity before the accused entered a plea

3. Although United States v. Harris, 133 F. Supp. 796 (W.D.Mo.1955), aff'd on other grounds, 237 F.2d 274 (8 Cir. 1956), would confine the rule that a plea of guilty eliminated the issue of limitations to cases where, as in Parrino, the prosecution might be able to bring itself within an exception to the statute, this appears inconsistent with the language in United States v. Cook, supra, 84 U.S. (17 Wall.) at 180, and with the thrust of Judge Hand's decision in Parrino. We also note that a variance between the pleaded date and the proof at trial is normally permitted for limitations purposes, unless actual prejudice would be worked upon the

defendant. United States v. Perlstein, 126 F.2d 789, 798 (3 Cir.), cert. denied, 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942); see Ledbetter v. United States, 170 U.S. 606, 612–613, 18 S.Ct. 1774, 42 L.Ed. 1162 (1898). In any event Harris cannot aid appellant since the indictment here was timely on its face.

4. Although it is doubtful that the Government would agree to dismiss the remaining counts of a multi-count indictment after such a qualified plea to a single count, this only reinforces our conclusion, for reasons elaborated below.

of guilty to the Fourth Count. And every effort was made to avoid any record, which resulted in this conviction. However, that is beside the point now; the matter has been disposed of, and he has a record of conviction on that Fourth Count." Counsel went on to explain that the indictment had "simmered down to one count * * * as a result of a statement, caused by a question propounded by your Honor to the District Attorney, as to what disposition would be made of the other counts. And it was agreed that they would be dismissed after this matter was disposed of." He reiterated "there was plenty of skirmishing before he entered his plea on the technical violation, and it is a conviction that will stand against him for the rest of his life." After telling the court about Doyle, the attorney continued, "The conviction itself is a sad thing for him. We tried every way, until finally he agreed to enter a plea, of his own free will and accord, to that Fourth Count, which will stand against him for the remainder of his days." Counsel concluded by stating that he and other counsel had "tried to represent him [Doyle] to the best of our ability" and "We think this was the best disposition, to do what we did. We stand by it * * *"

The Government, and the judge, had every reason to consider that this presentation, taken in the light of all the circumstances, waived any right of appeal from the denial of the motions to dismiss on the score of the very issues stated to be "beside the point now." It is inconceivable that the Government would have moved for dismissal of nine counts of the indictment it had been pressing for trial, some of which related to crimes of a date later than Count 4, if it had any notion that Doyle would shortly be urging that the conviction, represented to the court as one "that will stand against him for the rest of his life," would stand only for a few months. The imposition of a prison sentence, short as it was, obviously came as a most unpleasant surprise to Doyle and his lawyers. Yet when counsel then requested that execution of sentence be stayed briefly, there was no suggestion of any appeal. Rather, when Judge Clarie asked the reason for a stay, counsel replied, "Well, your Honor, we have got to make some preparations. As you know, this man is involved in many things, and I think that is a fair request * * *" Although we could remand for the taking of evidence and for findings as to an agreement, we think the record speaks for itself so clearly that no further delay should be brooked.

In disposing of this branch of the case as we do, we would not wish to be understood as implying disagreement with the judge's denial of the motion to dismiss. Like him we find little attractiveness in Doyle's now seeking to take advantage of the failure of the Department of Justice, when yielding to his entreaties that it investigate his claims of immunity, to exact an express waiver which, as shown by the subsequent conduct of his attorney, he would almost certainly have given. We simply do not reach the issue, for reasons here explained.

II.

■ The prison sentence of three years, with execution suspended after serving three months, and probation for a year must be conceded to be modest as compared with the five-year maximum allowed by 15 U.S.C. § 77x. Although Doyle's trial counsel chose to call the failure to register a "technical violation," counsel can hardly be unaware of the close connection between a wilful failure to register securities and their fraudulent sale, which this court has often pointed out, United States v. Crosby, 294 F.2d 928, 944–945 (2 Cir. 1961), cert. denied, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962); United States v. Benjamin, 328 F.2d 854, 864 (2 Cir.), cert. denied, 377 U.S. 953, 84 S.Ct. 1631, 12 L.Ed.2d 497 (1964). The principal attack is that, before passing sentence, the court said, "Now counsel has well-stated * * * that we are concerned directly with 50 shares of stock. But the Probation Officer's report also indicates that

this failure to register permitted the sale to many thousands of persons, of several millions of shares—two and a half, I think, millions of shares of stock, without the registration statement having been filed." After sentence had been pronounced, trial counsel suggested there might be "some correction that could be made about those two and one half million shares" and sought an opportunity to talk to Doyle about that. Judge Clarie said that this "wouldn't have that much bearing on the matter," that it was inconsequential "whether it was one million, or half a million," that "It is not a question of 50 shares of stock alone that the Court has considered. The lack of registration is the important and paramount factor." When the point was again pressed at the proceedings on May 17, the judge asked Doyle's New York attorney what he claimed was the correct figure of United States sales of unregistered shares for which Doyle was responsible. The attorney said his "only answer" was "that Mr. Doyle pleaded guilty to Count Four of the indictment, which charged him with fifty shares." The judge properly characterized this as evasive. The brief and argument for Doyle in this court were no more informative.

Doyle's basic contentions respecting these events appear to be two: that the stock transactions covered by other counts of the indictment and beyond it should not have been considered; and that, in any event, the sentence rests on an inaccurate exaggeration of the scope of those activities.

■■■ On the first point, Doyle disclaims, as he must, any contention "that the court is strictly limited, in imposing sentence, to the framework of a count upon which a defendant is found guilty." What remains of the argument after the disclaimer is not clear. The narrowing of the indictment to a single count limits the maximum punishment the court can impose but not the scope of the court's consideration within the maximum. The dismissal of the other counts at the Government's request was not an adjudication against it on the merits, even though, as a result of the statute of limtations, no further prosecution can occur for the offenses there charged. The aim of the sentencing court is to acquire a thorough acquaintance with the character and history of the man before it. Its synopsis should include the unfavorable, as well as the favorable, data, and few things could be so relevant as other criminal activity of the defendant, particularly activity closely related to the crime at hand. Counsel suggests that although a "criminal record" may be considered, crimes not passed on by a court are beyond the pale, but we see nothing to warrant this distinction. Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Of necessity, much of the information garnered by the probation officer will be hearsay and will doubtless be discounted accordingly, but the very object of the process is scope and the defendant is always guarded by the statutory maximum. To argue that the presumption of innocence is affronted by considering unproved criminal activity is as implausible as taking the double jeopardy clause to bar reference to past convictions. See Williams v. State of Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959). Indeed, Doyle's protests are almost ludicrous as applied to the present facts. The Government was ready to proceed on all the counts; simply by adhering to his former plea Doyle could have had a public trial where he could dispute all the Government's charges, and fully preserve the points dealt with in Part I of this opinion as well. It was he, on the advice of many highly sophisticated counsel, who avoided airing of the facts by a guilty plea.

Doyle's second criticism of the sentence, concerning an alleged error as to the number of shares sold, is equally without merit. We begin with grave doubts that the point deserves any consideration in view of the persistent failure of Doyle's attorneys to suggest another figure or even to explain precisely how the trial judge's figure is challenged; we cannot imagine that even a very siza-

ble reduction from two and one half million would seriously alter a trial judge's picture of the distribution as a large—scale enterprise. The silence on this score could well be the basis for inferring that Judge Clarie was not seriously mistaken and strongly suggests that any figure counsel could support would be sufficiently large that the differences would be of no consequence.

Even if Doyle could show that the judge was mistaken by several orders of magnitude, no grounds for reversal would exist. For the trial judge, while quite properly indicating that more was at stake than a sale of fifty shares of stock, expressly emphasized that no great weight was given to the particular number of shares and that failure to register was the significant consideration. Doyle was a business man of experience, dealing in stock of his own enterprise, and said to be fully familiar with the registration requirement; there is not the slightest reason to doubt that the trial judge meant what he said in specifying the basis for his sentence. To cite decisions like Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), as requiring reversal is incongruous. There a defendant who neither received nor waived the assistance of counsel was given a substantial sentence after the trial judge recited and remarked on a record of past offenses, of which just under half turned out to be not convictions but acquittals. The principle stated by Mr. Justice Jackson was "that the disadvantage from absence of counsel, when aggravated by circumstances showing that it resulted in" actual disadvantage or prejudice violated due process, and the Justice emphasized how counsel might have redressed the false assumptions of the sentencing judge. Doyle was possessed of a large force of lawyers who were given ample opportunity to correct any misapprehension.

The judgment is affirmed. Since execution of this sentence has already been too long delayed, we direct that the mandate issue five days from the filing of this opinion.