**UNITED STATES of America,**
**Appellee,**

v.

**Frederick P. SELBY, Defendant-**
**Appellant.**

**No. 755, Docket 73-1044.**

United States Court of Appeals,
Second Circuit.

Argued March 30, 1973.

Decided April 11, 1973.

---

**966**

Jay Horowitz, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., and John W. Nields, Jr., Asst. U. S. Atty., of counsel), for appellee.

Jesse Climenko, New York City (Shea, Gould, Climenko & Kramer and Ira Postel, New York City, of counsel), for defendant-appellant.

Before FRIENDLY, Chief Judge, LUMBARD, Circuit Judge and THOMSEN,* District Judge.

PER CURIAM:

Frederick P. Selby appeals from a conviction on his plea of guilty to one count of a four count indictment in the District Court for the Southern District of New York. The indictment charged that Selby had engaged in tax evasion in violation of 26 U.S.C. § 7201 for the tax

years 1965 and 1966 and in wilful subscription under penalties of perjury to false federal income tax returns for the same years in violation of 26 U.S.C. § 7206(1). The gravamen of both charges was the deliberate omission of interest on a Swiss bank account; Selby claimed he had been advised by an unidentified Swiss lawyer that the interest did not become taxable until brought into the United States.

After pleading not guilty, Selby moved to suppress records relating to the Swiss bank account, alleging that these had been furnished to the Internal Revenue Service in consequence of a representation by Revenue Agent John Flynn to Selby's attorney, Emilio A. Dominianni, on October 3, 1967, that the Service had not received a letter concerning the Swiss account from F. Roberts Blair, the attorney for Selby's wife, with whom Selby was having marital troubles, whereas, unbeknownst to Flynn, Blair had delivered such a letter to Special Agent Wolff. After Judge Cannella denied the motion, the Government agreed to accept a plea of guilty to the count charging tax evasion for 1966. The judge imposed a sentence of one year's imprisonment and a fine of $10,000; however, he directed that Selby be confined to a jail-type institution for only two months, the balance of the prison sentence being suspended and defendant being placed on probation.

The attempt to appeal flies in the face of our decision in United States v. Doyle, 348 F.2d 715, 718 (2 Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L. Ed.2d 84 (1965), where we said, quoting from United States v. Spada, 331 F.2d 995, 996 (2 Cir.), cert. denied, 379 U.S. 865, 85 S.Ct. 130, 13 L.Ed.2d 67 (1964), "[t]he cases are legion that '[a] plea of guilty to an indictment is an admission of guilt and a waiver of all non-jurisdictional defects.'" See also McMann v. Richardson, 397 U.S. 759, 766, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); United

* Of the District Court for the District of Maryland, sitting by designation.

States v. Mann, 451 F.2d 346 (2 Cir. 1971). While at the time of the plea there was some discussion of appeal, particularly in the context of 28 U.S.C. § 1292(b) and apparently without realization that the interlocutory appeal statute does not apply in criminal cases, the situation was wholly unlike Jaben v. United States, 333 F.2d 535 (8 Cir. 1964), aff'd without discussion of the point, 381 U.S. 214, 85 S.Ct. 1365, 14 L. Ed.2d 345 (1965), where, as brought out in our *Doyle* opinion, 348 F.2d at 719, a plea of *nolo contendere* was accepted on the express condition that the defendant was preserving his right to seek review of his claim that the indictment was barred by the statute of limitations. Although the Judicial Conference of the United States has considered the possible desirability of allowing a defendant to plead guilty but preserve the right to appeal the denial of a suppression motion, Reports of the Proceedings of the Judicial Conference (Mar. 16–17, 1970) at 16, and (Mar. 15–16, 1971) at 41, as the New York Legislature has provided, N.Y.Crim.Proc.Law § 710.70(2) (McKinney's Consol.Laws, c. 11–A, 1971), nothing has been done to implement this, and we must take the law as it is. Selby could have preserved his right to appeal the denial of the suppression motion by going to the trial for which a jury had already been chosen; instead his counsel worked out an arrangement whereby he was allowed to plead guilty to one count rather than risk conviction on four.

■■ The choice was wise since the suppression motion was wholly lacking in merit. As early as September 14, 1967, Blair told Dominianni that he was going to write the Internal Revenue Service about the Swiss bank account. On September 20 he wrote Dominianni that he had done so. Dominianni's advice to Selby to make a clean breast in the hope that this might avoid criminal prosecution was based on his belief that the Service would surely learn of the Swiss account from Blair, who was acting not simply out of spite but to keep Mrs. Selby from being prosecuted. Even if the principle of Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed. 2d 104 (1972)—that a promise by one member of a prosecutor's office must be attributed to the Government even if unknown to his successor—were applicable to a case like this, of which we are extremely doubtful, it is impossible to believe that a lawyer of Dominianni's experience would have given different advice if he had been told by Flynn that the IRS in fact had received Blair's letter. Beyond this, Flynn denied that any discussion of the Swiss bank account occurred on October 3, and his notes reflect that on December 12, 1967, long before any records were furnished, he discussed the Swiss account with Dominianni. While Dominianni's records failed to show any meeting with Flynn on the latter date and he did not recall one, the judge would have been warranted in accepting Flynn's record about an event in the life of a busy lawyer five years before the hearing. Beyond all this, the record is murky whether the figures concerning the Swiss account were in fact ultimately furnished by Selby at all; such evidence as there is suggests that they were supplied to the IRS by his wife. If we had power to decide the appeal, we would dismiss it as frivolous.

The appeal is dismissed; the mandate shall issue forthwith.