UNITED STATES of America, Appellee,

v.

John A. DePOLI, Defendant-Appellant.

No. 887, Docket 79–1465.

United States Court of Appeals,
Second Circuit.

Argued March 11, 1980.

Decided July 31, 1980.

Jacob D. Zeldes, Bridgeport, Conn. (Joseph C. Gasparrini and Zeldes, Needle & Cooper, P. C., Bridgeport, Conn., of counsel), for defendant-appellant.

Richard Blumenthal, U. S. Atty. for the District of Connecticut, New Haven, Conn. (Michael Hartmere, Asst. U. S. Atty., New Haven, Conn., of counsel), for appellee.

Before MANSFIELD and FRIENDLY, Circuit Judges, and SIFTON,* District Judge.

SIFTON, District Judge.

■ This is an appeal by John DePoli from his conviction entered upon a plea of *nolo contendere* to one count of a two-count indictment which charged him with willful evasion of personal income taxes owed by DePoli and his wife for the calendar years 1973 and 1974 in violation of 26 U.S.C. § 7201. DePoli's plea was accepted by Judge T. F. Gilroy Daly of the District of Connecticut following the judge's disposition by rulings from the bench of a series of pre-trial motions. DePoli's motions questioned the methods by which the investigation leading to defendant's indictment was conducted, the method of selection of grand juries in the District of Connecticut, and the method by which the government proposed to prove its case at trial. At the time of plea, DePoli's attorney "reserved" the right to appeal Judge Daly's disposition of the pre-trial motions, but neither requested nor obtained the consent of Judge Daly to this procedure. Our prior cases have made clear that such consents, as well as the

---

* Of the United States District Court for the Eastern District of New York, sitting by designation.

consent of the Government counsel, are required in all cases involving pleas contingent on preserving a right to appeal rulings with regard to non-jurisdictional defects in a criminal prosecution and that in their absence a plea of guilty or *nolo contendere* may result in a waiver of objections to such defects in the prosecution. *United States v. Doyle*, 348 F.2d 715, 719 (2d Cir.), *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965); *United States v. Mann*, 451 F.2d 346, 347 (2d Cir. 1971); *United States v. Selby*, 476 F.2d 965, 967 (2d Cir. 1973); and *see United States v. Rothberg*, 480 F.2d 534, 535 (2d Cir.), *cert. denied*, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973); *United States v. Faruolo*, 506 F.2d 490, 491 n.2 (2d Cir. 1974); *United States v. Burke*, 517 F.2d 377, 379 (2d Cir. 1975); *United States v. Fury*, 554 F.2d 522, 524 n.2 (2d Cir.), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977); *United States v. Coyne*, 587 F.2d 111, 115 (2d Cir. 1978); and *United States v. Price*, 599 F.2d 494 (2d Cir. 1979).[1] We conclude that failure to follow the procedures set forth in our earlier cases has resulted in a waiver of certain of appellant's arguments in the circumstances here presented. With regard to the other arguments raised on this appeal, we have considered them on the merits and affirm the judgment below.

■ DePoli's principal complaint on this appeal concerns Judge Daly's denial of his motion to suppress evidence said to have been derived from the probation office files

---

1. The Circuits are presently divided on the acceptability of conditional guilty pleas. This Circuit is joined by the D.C. Circuit and the Eighth Circuit in permitting conditional guilty pleas only when made with the consent of the government and the court. *Coleman v. Burnett*, 477 F.2d 1187, 1195 (D.C.Cir.1973) (*dictum*); *United States v. Clark*, 459 F.2d 977, 978–79 (8th Cir.), *cert. denied*, 429 U.S. 880, 93 S.Ct. 209, 34 L.Ed.2d 135 (1972); *Jaben v. United States*, 333 F.2d 535 (8th Cir. 1964), *aff'd*, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965). The Third Circuit allows conditional guilty pleas even over the government's objection. *United States v. Moskow*, 588 F.2d 882, 890 (3d Cir. 1978). Four Circuits, the Fourth, Fifth, Sixth and Ninth, prohibit conditional guilty pleas which seek to preserve rights of appeal from non-jurisdictional defects in the prosecution; *United States v. Benson*, 579 F.2d 508 (9th Cir. 1978); *United States v. Matthews*, 472 F.2d 1173 (4th Cir. 1973); *United States v. Sepe*, 486 F.2d 1044 (5th Cir. 1973) (*en banc*) (*per curiam*); *United States v. Cox*, 464 F.2d 937, 945 (6th Cir. 1972).

The First Circuit has expressed some support for the concept of conditional guilty pleas, *United States v. Decosta*, 435 F.2d 630, 632 (1st Cir. 1970) (*dictum*), but has declined to rule on their acceptability, *id.*; *United States v. Warwar*, 478 F.2d 1183, 1185 n.1 (1st Cir. 1973) (*dictum*).

The Tenth Circuit has also not formally ruled on the issue, but appears not to favor conditional guilty pleas. *See United States v. Nooner*, 565 F.2d 633, 634 (10th Cir. 1977) (*dictum*); *Roeth v. United States*, 382 F.2d 96, 98 (10th Cir. 1967), *cert. denied*, 390 U.S. 1016, 88 S.Ct. 1266, 20 L.Ed.2d 165 (1968).

The Seventh Circuit has expressed disapproval of conditional pleas as a matter of policy, *see United States v. Brown*, 499 F.2d 829, 832 (7th Cir.), *cert. denied*, 419 U.S. 1047, 95 S.Ct. 619, 42 L.Ed.2d 640 (1974), but will honor them where the "district court held out some reason for the defendants to believe that they were pleading guilty 'subject to that condition' albeit lacking the consent of the prosecutor to that condition." *Ibid; United States v. Michigan Carton Co.*, 552 F.2d 198, 202 (7th Cir. 1977).

Requiring the consent of the government and the district court to the reservation of a right of appeal serves to permit an explicit and reasoned resolution in the context of the particular case, subject to review by this Court, of the variety of conflicting considerations which are raised by that form of plea—considerations which, perhaps, themselves, explain the variety of conflicting conclusions about the propriety of the use of the plea both within and between the Circuits. Prominent among those considerations are issues of efficiency in the use of trial and appellate resources, *see e. g., United States v. Moskow, supra*, 558 F.2d at 893 (Stern, D. J., dissenting); issues relating to finality; issues of voluntariness to be explored under Rule 11 of the Federal Rules of Criminal Procedure; and questions concerning the appropriate burden to be imposed on those seeking to vindicate their rights through appeal. *See* Note, "Conditional Guilty Pleas," 93 Harv.L.Rev. 564 (1980). Included among issues of finality are issues such as that which has surfaced in this case, as to whether a previously non-final determination should become effectively final for purposes of review. Included among issues of efficiency are considerations of the type raised by an application such as DePoli's to appeal a denial of a pretrial suppression motion which, even if erroneous, stands a good chance of being found harmless in the light of all the evidence developed at a trial of the general issue.

created in connection with a probationary term imposed on DePoli by the Connecticut District Court in 1963. DePoli's 1963 sentence followed his plea of guilty to an indictment which charged him with engaging in the business of accepting wagers without registering or paying the special occupational tax owed by persons in that business, a type of prosecution which was, subsequent to his conviction, held unconstitutional in *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). *See Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); 26 U.S.C. § 4401 *et seq.*

DePoli's argument is twofold. First, he contends that, since his probation was served pursuant to a judgment of conviction which was vacated in *United States v. Summa, DePoli et al.*, 362 F.Supp. 1177 (D.Conn.1972), *aff'd without opinion*, Docket No. 73–7161 (2d Cir. August 14, 1973), as a result of the Supreme Court's decisions in *Marchetti* and *Grosso*, it was improper thereafter for an IRS agent to examine the files generated as a result of the probationary sentence. Second, DePoli argues that disclosure of the probation office files to the IRS agent without court approval violated Rule 32 of the Federal Rules of Criminal Procedure, a violation which he contends warranted suppression of all evidence derived from that act.

■ DePoli's first argument, that his statements to his probation officer were tainted by reason of the fact that they derived from his vacated conviction, takes two forms. First, DePoli regards his statements to his probation officer as involuntary because made in ignorance of the fact that he had an absolute fifth amendment defense to prosecution for violation of the wagering tax laws. The argument relies on too literal an identification of voluntariness with "knowing" choice. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 224, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973). DePoli's will was not "overborne" or "his capacity for self-determination critically impaired" by his probation officer. *Id.* at 225, 93 S.Ct. at 2047. On the contrary, the invalidity of

DePoli's conviction was, on this record, a matter concerning which both the probation officer and DePoli were equally ignorant or which both were equally able to predict. We see no basis for concluding that DePoli's statements to his probation officer resulted from an involuntary waiver of his fifth amendment privilege simply because of their shared ignorance of the invalidity of the prosecution on which DePoli's conviction was based.

■ DePoli's second point is that his statements to his probation officer must be suppressed because they would not have been made but for his prosecution under a statute which could not be constitutionally enforced against him. This contention must also be rejected. The view that an unconstitutional law should be treated as having had no effects whatsoever from the date of its enactment, *see, e. g., Norton v. Shelby County*, 118 U.S. 425, 442, 6 S.Ct. 1121, 1125–1126, 30 L.Ed. 178 (1886), has been replaced by a more realistic approach which recognizes that "[t]he actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored." *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1940). Whether a particular consequence of an unconstitutional conviction can be "justly ignored" will depend on the reason for which the conviction was invalidated and the nature of the particular consequence sought to be avoided, among other factors, *ibid; Lemon v. Kurtzman*, 411 U.S. 192, 198–99, 93 S.Ct. 1463, 1468, 36 L.Ed.2d 151 (1973) (Lemon II) (plurality opinion). Thus, where the reason for invalidating a prosecution was, as in *Marchetti* and *Grosso*, that it sought to punish conduct protected by the fifth amendment, any punishment, including not only the conviction, but the collection of fines and the prosecution of criminal forfeitures, is required to be terminated because "we have held that the conduct being penalized is constitutionally immune from punishment." *United States v. United States Coin and Currency*, 401 U.S. 715, 724, 91 S.Ct. 1041, 1046, 28 L.Ed.2d 434 (1971).

It is a far cry from *United States v. United States Coin and Currency, supra,* to this case, however. The consequence here sought to be ignored is not, on this record, part of the punishment of DePoli for engaging in constitutionally protected behavior, *i. e.,* his failure to register as a gambler or to purchase a wagering tax stamp. It was, instead, part of an IRS investigation of DePoli for the crime of tax evasion. To rule that records created during the course of DePoli's sentence and probation, in effect, do not exist would not serve the purpose for which his conviction was set aside. On the other hand, it would ignore the "fact of legal life [which] underpins our modern decisions recognizing a doctrine of nonretroactivity," namely, "our recognition that . . . rules of law are hard facts on which people must rely in making decisions and in shaping their conduct." *Lemon v. Kurtzman, supra,* 411 U.S. at 199, 93 S.Ct. at 1468 (plurality opinion).

We turn, then, to DePoli's claim that Rule 32 of the Federal Rules of Criminal Procedure prohibited the disclosure of information derived from DePoli's presentence report and record as a probationer without prior court approval and that the failure to obtain prior court approval for the disclosure to the IRS agent merits suppression of all evidence derived from that examination.

■ The most obvious answer to this claim is that Judge Daly found that nothing "used to establish this case" was derived from the examination of the files of the probation department since "[t]he government has established that independent and alternative sources were used to establish this case aside from the information . . . gathered . . . from the probation report." (A. at 135.) This ruling is, on the record before us, not clearly erroneous.

The investigation which led to DePoli's indictment had numerous sources, apart from the visit to his probation officer, including contacts with the Connecticut State Police, who provided evidence concerning DePoli's prior activities as a bookmaker and his previous criminal record; information supplied by the Connecticut Strike Force;

DePoli's personal tax returns, which disclosed some of his business interests, his address and those of his relations; the United States Post Office, which supplied information concerning his correspondents from a mail watch, discussed more at length below; a tape recording of a conversation discussing DePoli's bookmaking business; a check of Connecticut court records of deeds and mortgages; an interview with DePoli; and records supplied by DePoli's accountants.

The inspection of the probation office files—which occurred after the preliminary steps in the investigation, including the contact with the Strike Force, the Connecticut State Police, and the Post Office, had already occurred—produced, according to the evidence below, no information which was later used in any fashion in the investigation, except in two categories. First, the revenue agent in his report to the Department of Justice recommending prosecution refers to statements by DePoli to his probation officer to the effect that he was discharged from the army for financial hardship in 1949 and that a 1962 arrest for accepting wagers was caused by his dire financial straits at the time, as some evidence to negate the possibility of a cash hoard defense to a prosecution for tax evasion based on a net worth-expenditures analysis. In addition, the revenue agent refers in the same report to inconsistencies between DePoli's account of his activities and sources of income during his probation to his probation officer and the picture of DePoli's activities uncovered during the IRS investigation, as some evidence that DePoli was engaged in bookmaking, thereby providing him with a motive for concealing the true source of his income and filing a false return. We cannot, on this record, conclude that Judge Daly was clearly erroneous in finding that these limited uses of the probation report in the investigation of this case were harmless. There is ample evidence in the record to establish that the case against Mr. DePoli would have gone forward, even had the information obtained from the probation officers not been part of

**784**

the investigative file. *United States v. Cole*, 463 F.2d 163, 175 (2d Cir.), *cert. denied*, 409 U.S. 942, 93 S.Ct. 238, 34 L.Ed.2d 193 (1972); *United States v. Friedland*, 441 F.2d 855 (2d Cir.), *cert. denied*, 404 U.S. 867, 92 S.Ct. 143, 30 L.Ed.2d 111 (1971). That file included ample evidence of a much more direct sort than that referred to by the revenue agent with regard both to DePoli's activities as a bookmaker (including his tape recorded conversations) and with regard to DePoli's efforts to conceal from everyone, including his own accountants, the true source of his income. Since at no time has it been suggested that Mr. DePoli's explanation for his high level of expenditures in 1973 is that he had a cash hoard which came into existence before either 1949 or 1962, there is no basis for faulting Judge Daly's conclusion that the reference to the IRS agent's report to DePoli's financial condition at those times had no effect on the investigation's outcome.

■ Judge Daly's basis for ruling on the use of the probation report is, however, not even addressed in DePoli's brief on this appeal. Instead, it is DePoli's position that, since Judge Daly failed to rule on the use to which his statements to the probation officer could be put at trial and since any use of those statements at trial or otherwise was improper, his conviction below should be reversed.

We find this argument waived as a result of DePoli's failure to obtain the consent of Court to the reservation of DePoli's right to appeal this disposition of his pretrial motion. Had DePoli called to the attention of Judge Daly his intention of appealing from the judge's failure to suppress all use of DePoli's statements to his probation officer—whether in connection with his indictment or at trial—we have no doubt that Judge Daly would have declined to consent to the reservation of a right to appeal since the issue of the trial use of the probation information had been reserved until trial. In an earlier ruling Judge Daly had stated that, if the government during the course of the trial decided to use material derived from the probation report, it should make a

side bar application during the trial to do so, at which time the court would rule on the issue (Tr. at 59). *Cf. United States v. Cole, supra*, 463 F.2d at 171 (in which a similar procedure was employed). In view of this undertaking by the court to rule on the use at trial of material derived from the probation report during the course of the trial and in view of defendant's failure to use the procedures set forth in earlier decisions of this Court with regard to the reservation of a right of appeal in the face of a plea of *nolo contendere*, we have no hesitation in concluding that DePoli's plea waived any objection to the court's failure to determine prior to trial the admissibility at trial of materials derived from DePoli's probation report.

■ DePoli next argues that his conviction should be reversed because the mail watch obtained by the IRS from the Post Office of his home address, which resulted in substantial leads in the income tax investigation, is alleged to have been instituted in violation of Post Office regulations and, in any event, to have constituted an unreasonable search prohibited by the fourth amendment. We find no merit in either branch of the argument.

The Post Office regulations at issue, now set forth in 39 C.F.R. 233.2(e), provide for the institution of a mail watch by the Post Office:

"Where written request is received from any law enforcement agency . . . wherein the requesting authority stipulates and specifies the reasonable grounds that exist which demonstrate the mail cover would . . . assist in obtaining information concerning the commission or attempted commission of a crime."

According to DePoli, the requesting authority in this case did not set forth "reasonable grounds," but instead, submitted a letter which contained materially false statements requiring the suppression of all evidence derived from the proceeding under the rule announced in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The materially false statements referred to are said to be (1) that DePoli did

not have an attorney representing him when in fact he did, and (2) that the defendant maintained his assets in the names of nominees, family members and in foreign or out-of-state bank accounts or investments. The proposition that the IRS request did otherwise specify reasonable grounds for believing that the crimes under the tax laws were being committed by DePoli which a mail watch would assist in uncovering is not contested, as, indeed, it could not be since the request is quite specific and detailed as to the crimes under investigation and as to the reasons for thinking that a mail watch would produce information useful in pursuing an income tax investigation.

Even had these Post Office regulations been shown to have been violated by the actions of the IRS here at issue, we would have a substantial question whether the exclusionary rule of *Franks v. Delaware, supra,* should be extended to cover violations of agency regulations such as those at issue here. But, because we see no evidence whatsoever that the alleged misstatement concerning DePoli's attorney was material to the question whether there were reasonable grounds to believe that the mail cover would assist in uncovering information concerning the commission of a crime and because we find no misstatement to have been shown concerning the existence of out-of-state bank accounts and investments and the use of family members or other nominees to hold assets, we need not reach the question what sanctions would be appropriate had the IRS been shown to have made material or intentional misstatements of fact in applying to the Post Office for the mail watch.

The exclusionary rule set forth in *Franks v. Delaware, supra,* is limited to intentional or material misstatements of fact made in an affidavit supporting an ex parte application for a search warrant. 438 U.S. at 171–72, 98 S.Ct. at 2685. DePoli's argument, that the IRS agent requesting the mail cover must be deemed to have known that DePoli was represented by a lawyer who was seeking to recover the fine paid on his vacated wagering tax conviction be-cause of the existence of a letter from the Chief of the Intelligence Division of the IRS seeking to assist the attorney in recovering that fine, hardly establishes the kind of intentional misrepresentation that the exclusionary rule of *Franks v. Delaware, supra,* sought to deter. The statement concerning representation was plausibly explained by its maker as confined to the question whether DePoli had an attorney representing him in connection with the criminal investigation which led to the request for a mail watch. Moreover, the information concerning legal representation was gratuitous, not required under the Post Office regulations relied on, nor material to the question whether the mail watch would assist in a criminal investigation. We find no fault with the IRS agent's request in this regard.

The fact that the IRS agent had difficulty recalling four years after the fact the basis for his statement in the request form that DePoli's assets might be found in the name of nominees, family members and out-of-state bank accounts or investments hardly establishes an intentional misrepresentation. Quite arguably, the basis for the statement was simply the natural inferences to be drawn from information received by the agent in writing from the Connecticut State Police that DePoli was the owner of the largest policy operation in the Stamford, Connecticut area, grossing in excess of $1 million annually, that he possessed no other visible means of support, that he enjoyed a high standard of living, that he took frequent trips, that he employed in excess of twenty-five controllers and runners, and that he reported adjusted income of his tax returns of only $15,366 and $17,257 for the calendar years 1970 and 1971. In all events, DePoli did not even attempt to demonstrate the untruth of the statements concerning the manner in which his wealth was being held in 1974. There is, hence, no basis for taxing the IRS agent with any misstatement.

■ With regard to DePoli's constitutional argument concerning the mail watch,

since there is no reasonable expectation of privacy with regard to the outside of a letter, *see United States v. Leonard*, 524 F.2d 1076, 1087 (2d Cir. 1975), *cert. denied*, 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976); *United States v. Huie*, 593 F.2d 14, 15 (5th Cir. 1979); *United States v. Choate*, 576 F.2d 165, 182 (9th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978), we find no basis for a fourth amendment claim.

█ DePoli next argues that Section IX(6) of the Connecticut District's *Plan for the Random Selection of Grand and Petit Jurors Pursuant to the Jury Selection and Service Act of 1968*, as amended through July 29, 1977, conflicts with 28 U.S.C. § 1862 by reason of the plan's provision for the excuse upon request of women who have custody of children under 12 years of age. However, absent some proof that the existence of this provision results in the exclusion of a substantial number of women from Connecticut grand juries, we see no basis for determining that the indictment against DePoli should have been dismissed on this account. *Cf. Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *United States v. Zirpolo*, 450 F.2d 424 (3d Cir. 1971).[2]

█ DePoli's complaint, that the requirements of *United States v. LaSalle National Bank*, 437 U.S. 298, 311–13, 98 S.Ct. 2357, 2364, 2366, 57 L.Ed.2d 221 (1978), were not met in connection with the IRS summonses issued in connection with the investigation which led to his indictment, is without merit because Judge Daly's findings—that the IRS had not, in words or substance, recommended prosecution, abandoned the collection of taxes as an objective of its inquiry, or otherwise proceeded in bad faith—were supported by substantial evidence and are not clearly erroneous.

DePoli's arguments concerning the net-worth expenditures method of proof which the government proposed to use at his trial were disposed of in *Holland v. United States*, 348 U.S. 121, 129, 75 S.Ct. 127, 132, 99 L.Ed. 150 (1954), which is still the applicable law. *Mackey v. United States*, 401 U.S. 667, 669 n.2, 91 S.Ct. 1160, 1161 n.2, 28 L.Ed.2d 404 (1971).

The conviction is, accordingly, affirmed.

MANSFIELD, Circuit Judge (concurring):

I concur solely on the ground that DePoli, by failing to obtain the consent of Judge Daly to acceptance of his *nolo contendere* plea on condition that he would have the right (1) to appeal the denial of his pretrial motions *and* (2) to withdraw his guilty plea if the district court's rulings should be reversed, waived his objection to any defects in his prosecution. Although the Government stipulated to DePoli's reservation of his right to appeal the motions, Judge Daly did not approve the stipulation. On the contrary, he stated "Whatever the agreement is between you gentlemen, I'm not privy to it." Moreover, the record is unclear as to whether DePoli would have the right to withdraw his guilty plea in the event of reversal. The case is therefore governed by our decision in *United States v. Mann*, 451 F.2d 346, 347 (2d Cir. 1971).

In view of the waiver I find it unnecessary to consider the merits of the district court's rulings or whether they would have constituted harmless error if the case had gone to trial.

---

**2.** We note that by amendments to the Connecticut plan dated July 29, 1977, and January 11, 1980, the excuse for those with custody of children under twelve years of age has been made available to anyone who can demonstrate that absence for jury service would jeopardize the children's health or safety.