JOHNSON et al., Appellants, v. EBENSEN, Respondent.

(160 N. W. 847.)

(File No. 4075.   Opinion filed December 30, 1916.   Rehearing denied February 7, 1917.)

1.   Sales—Breach of Warranty, Sale of Hogs—Evidence, Sufficiency of.

In a suit for damages for breach of warranty of a carload of hogs, plaintiff claiming that defendant warranted the hogs to be sound and healthy, and free from hog cholera, etc., and that the hogs were infected with hog cholera at time of purchase, defendant admitting warranty that the hogs would be purchased in a community where they were free from hog cholera and would be bought healthy, held, under conflicting testimony involving disparity between dates on which hogs were exposed to cholera, and on which they would show effects of the disease, that the evidence sustained a finding that the hogs had been exposed to cholera before they were shipped to plaintiffs, notwithstanding defendant claimed that it was not cholera, but that the hogs had taken cold during shipment.

2.   Evidence—Witnesses, Impeachment of—Contradicting Impeaching Witness—Competency, Etc.

In a suit for damages on an alleged warranty of a carload of hogs, defendant's witness having testified on cross-examination that he knew plaintiffs' reputation for truth and veracity in the community and that it was bad, and that plaintiffs' attorney had stated as much to him eight years before, held, that the testimony of the attorney as to whether he made such statement was properly admitted against objections to its

competency, materiality and relevancy, the purpose of the testimony being to contradict testimony of impeaching witness.

3.  Same—Impeachment—Privileged Communication—Competency—Statute Construed.

Under Code Civ. Proc., Sec. 538, Subd. 1, providing that an attorney cannot without consent of his client be examined as to any communication made by a client to him, or his advice given thereon in course of professional employment, held, that where a witness had testified to a statement made to him eight years before by plaintiffs' attorney as to reputation for truth and veracity of plaintiffs, a question asked the attorney, for the purpose of contradicting the impeaching witness, as to whether he made the alleged statement, did not call for a privileged communication.

4.  Same—Impeachment—Attorney and Client—Privileged Communication, Competency—Statute.

Code Civ. Proc., Sec. 539, providing that after a person offers himself as a witness he is deemed to consent to examination also of an attorney on the same subject, held, that where defendant's witness impeached plaintiffs' reputation for truth and veracity, and referred on cross-examination to an alleged statement made to witness by plaintiffs' attorney, while the question under consideration did not call for a communication by the impeaching witness to the attorney, nor for advice by the attorney to him, yet, the impeaching witness himself having testified to what the attorney said, he thereby consented to examination of the attorney, and as to whether he made the alleged statement.

5.  Same—Impeachment—Contradicting Impeaching Witness—"Collateral Matter on Cross-examination," Competency.

Where defendant's witness had testified on cross-examination, that he knew plaintiffs' reputation for truth and veracity, and that plaintiffs' attorney had stated this fact to him eight years before, held, that the attorney might be asked if he had made the alleged statement, such testimony not being objectionable as impeaching a witness "upon a collateral matter brought out on cross-examination," or because it only "tended to embarrass and delay the trial without subserving the ends of justice."

6.  Same—Impeachment—Contradiction of Impeaching Witness.

Defendant's witness had testified, on direct examination, that plaintiffs' reputation in the community for truth and veracity was bad, and on cross-examination testified that plaintiffs' attorney made said statement to him eight years before. Held, that, while the matter in question was collateral to the main issue involved on the trial, yet it was not brought out on cross-examination, and plaintiffs might so cross-examine him and,

for the purpose of impeaching or discrediting him, might contradict him with other witnesses; this, although generally an impeaching witness cannot be impeached.

**7. Trials—Reception of Impeaching Evidence—Collateral Issues—Judicial Discretion.**

It is the duty of trial court to prevent, so far as practicable, the injection of collateral issues into the trial of law suits; and the number of witnesses that may be used and the length of time that may be consumed, is left largely to the discretion of trial judge, but this discretion should be exercised in the interest of justice and with a view to ascertain the truth.

Appeal from Circuit Court, Clay County. Hon. ROBERT B. TRIPP, Judge.

Action by Charles F. Johnson and others, copartners, against Martin Ebensen, to recover damages for breach of warranty of hogs sold to plaintiffs by defendants. From a judgment for defendant, and from an order denying a new trial, plaintiffs appeal. Reversed, and new trial awarded.

*Bogue & Bogue, and August Frieberg,* for Appellants.

*Gunderson & Gunderson,* and *W. J. Bulow,* for Respondent.

(2) To point two of the opinion, Appellants cited: Wigmore on Evidence, Sub. 3, Sec. 1111; Prentiss v. Roberts, 49 Me. 127.

Respondent cited: Jones on Ev., Vol. 5, Secs. 827, 864; Wigmore on Evidence, Vol. 2, Sec. 1111; Sonneborn v. Bernstein, 49 Ala. 172; Robbins v. Spencer, 22 N. E. 660, 121 Ind. 596; McDermott v. State, 13 Ohio St. 3; 40 Cyc. 2769 and 2770; Robbins v. Spencer, 22 N. E. 660, 121 Ind. 596.

(4) To point four of the opinion, Appellants cited: Code Civ. Proc., Secs. 538, 539.

(6) To point six of the opinion, Appellants cited: Fort Worth Co. v. Carbell, (Tex. Civ.) 161 S. E. 1083; (Ala.) 62 So. 962; (N. C.) 78 S. E. 145; (Tex.) 160 S. W. 374; (Tenn.) 117 Tenn. 415, 101 S. W. 173.

POLLEY, P. J. In this action plaintiffs seek to recover for the breach of an alleged warranty of a carload of hogs purchased from defendant by plaintiffs. The hogs were sold and delivered to plaintiffs by defendant on or about the 9th day of November, 1914, and it is alleged in the complaint that, at the time of said purchase, defendant expressly warranted and represented to plaintiffs that all of said hogs were sound and healthy and free from hog cholera and other contagious diseases, and that they

had been shipped from a locality that was free from hog cholera and hog diseases; and that plaintiffs believed and relied upon said warranty when they made said purchase. It is then alleged that said warranty was untrue and known by defendant to be untrue at the time it was made; that, as a matter of fact, the hogs were infected with hog cholera at the time of the purchase; that, within a short time thereafter, 57 of them died from the effects of said disease; that said hogs so purchased from the defendant communicated the said disease to other hogs owned by plaintiffs, and thereby caused the death of a large number of such other hogs. Defendant denied making the warranty as alleged in the complaint and as testified to by plaintiffs, but, while on the witness stand in his own behalf at the trial, testified that he did warrant that the hogs would be bought in a "community where they were free from hog cholera and that they would be bought healthy." Verdict and judgment were for the defendant, and, from such judgment and the order overruling plaintiffs' motion for a new trial, plaintiffs appeal.

Plaintiffs rely upon two assignments for a reversal. At the trial, the court instructed the jury that, if the warranty testified to by defendant was the only warranty made by him, the plaintiffs would not be entitled to recover, and that their verdict should be for defendant. Plaintiffs contend that this instruction is erroneous; that, under the evidence in the case, the jury would be warranted in finding a verdict for the plaintiff even though there had been no warranty made except the one admitted by the defendant.

[1] The undisputed evidence shows that the hogs were bought for defendant in the vicnity of Burnstad, N. D., and shipped from that point on Friday; that they were unloaded from the car at Beresford, S. D., on the following Sunday; they were delivered to plaintiffs on the next day, and on the following Friday (just seven days from the day they were shipped from Burnstad, N. D.) the hogs commenced to die from the effects of hog cholera. Two veterinary surgeons testified as to the character of the disease known as hog cholera and the time within which it usually produces death. One of said witnesses testified that, after a hog has been exposed to cholera, it is usually eight to ten days before he shows the effects of the disease. The other veter-

inary testified that, in his opinion, it would be from five to twenty days after a hog has been exposed to hog cholera before he will show that he has taken the disease.   There was evidence tending to show that many of the hogs actually had the cholera and were showing the effects of it before they were sold to plaintiffs; that plaintiffs called defendant's attention to their condition and asked defendant if they did not have cholera; and that defendant assured plaintiffs that it was not cholera, but that they had taken cold while in the car.   Under all the evidence, the jury would have been warranted in finding that the hogs had been exposed to cholera before they were shipped from Burnstad, and that plaintiffs would have been entitled to recover upon the warranty as admitted by defendant, and the question should have been left to the jury.

[2, 3] The other assignment relates to the rejection of certain evidence offered at the trial by the plaintiffs.   For the purpose of impeaching the testimony of plaintiffs, defendant placed a witness (Holmes by name) upon the stand, who testified that he knew the plaintiffs' reputation for truth and veracity in that community, and that such reputation was bad.   Upon cross-examination, this witness testified that some seven or eight years ago, at his office, August Frieberg had told him that the plaintiffs' reputation for truth and veracity was bad.   August Frieberg was present in the courtroom and engaged in the trial of this case as one of the attorneys for plaintiffs.   After the witness Holmes finished his testimony, Mr. Frieberg took the stand and was asked if the witness Holmes had come to his office some seven or eight years previously to consult him (Frieberg), and if, in the conversation that took place, he (Frieberg) said to Holmes that the reputation of the Johnson boys, or any of the Johnson boys, for truth and veracity was bad.   This was objected to on the ground that it was "incompetent, immaterial, irrelevant, and as calling for a confidential communication between attorney and client and which he is not privileged to communicate without the ocnsent of the client."   The objection was sustained.   The purpose of the question was to contradict the testimony of the impeaching witness and, for that purpose, was competent as well as both material and relevant.   Neither did it call for a privileged

communication. Subdivision 1, § 538, Code Civ. Proc., reads as follows:

"An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment."

[4] The question under consideration did not call for any communication made by Holmes to Frieberg, nor did it call for any advice given by Frieberg as an attorney to Holmes. Moreover, Holmes himself, having testified to what was said by Frieberg in said conversation, consented to the examination of Frieberg upon the same subject. Section 539, Code Civ. Proc. But, upon the motion for the new trial and again in this court, defendant contends that the purpose of the testimony called for by the question is to "impeach a witness upon a collateral matter brought out on cross-examination" and, for that reason, said testimony could not be admitted. As applied to this particular class of testimony, it is generally held that an impeaching witness cannot be impeached. Professor Jones, in his work on evidence, at section 864, in discussing this class of testimony, says:

"He (the impeaching witness) may be asked to state the names of all persons whom he has heard make statements unfavorable to the reputation of persons in question and what each person said. But these statements of the witnesses are as to collateral facts, and cannot be contradicted by other witnesses."

Robbins v. Spencer, 121 Ind. 596, 22 N. E. 660, is cited in support of the text. In this case, the court, in discussing this identical subject, say:

"Accordingly, it has been held that the impeaching witness may be asked on cross-examination to name the individuals who had spoken disparagingly of the impeached witness, and what they said. State v. Perkins, 66 N. C. 126; Weeks v. Hull, 19 Conn. 376 [50 Am. Dec. 249]; 1 Whart. Ev. §§ 565-568; 2 Phil. Ev. 958. To this extent the rule seems to be satisfactorily established, but we know of no authority, nor can we conceive of any valid reason, which would justify a collateral issue, such as would arise if the evidence proposed were admitted, between the witnesses. Such an inquiry would only tend to embarrass and delay trials, without subserving the ends of justice. The estab-

lished rule ,applicable in a case like the present, as in all others, is that, 'in order to avoid an interminable multiplication of issues, it is a settled rule of practice that when a witness is cross-examined on a matter collateral to the issue he cannot, as to his answer, be subsequently contradicted by the party putting the question.' "

[5, 6] Thus two reasons are given for the exclusion of the testimony in question: First, that the inquiry would only "tend to embarrass and delay the trial without subserving the ends of justice"; and, second that a witness cannot be contradicted as to collateral matters brought out on cross-examination. The first objection has no application to the circumstances existing in this case at the time the objection was made. In regard to the other reason, it is true that the matter being inquired into, to-wit, plaintiffs' reputation for truth and veracity, was collateral to the main issue involved on the trial, but it was not brought out on cross-examination. It was brought out through Holmes' examination in chief ,and plaintiffs had a right to cross-examine him upon all such matters, and, for the purpose of impeaching or discrediting him, had the right to contradict him with other witnesses if they could. Prof. Wigmore, in discussing this question (2 Wig. Ev. § 1111), says:

"The objections to such an inquiry are: First, the consumption of time and confusion of issues; and, secondly, the multiplication of petty scandal and the creation of hard feelings between the impeached witness and the innocent third persons whose names are brought into the dispute against their will and whose remarks may have been made in confidence. The first objection is no more serious here than for other cross-examination of all sorts. But the second objection undoubtedly discloses one of the unfortunate and degrading features of character testimony. An answer, to be sure, is that, since testimony based on personal knowledge is now almost universally excluded (post, § 1980), and, since reputation-testimony is notoriously so easily fabricated and its fabrication can be exposed only in this way, it would be inexpedient to destroy the only security against false impeaching testimony. * * *

"May the impeaching witness, after naming certain persons or reports, be contradicted and shown to speak incorrectly on those

points? The answer to this is usually negative, on the theory that the contradiction concerns a collateral point (ante, § 1004). But this result seems unsound, for the denial can usually be summary and effective, and the effect on the impeaching witness' credit is so direct that it cannot be termed collateral."

This, we believe, applies with special force to the case under consideration.

[7] It may be that the refusal to permit the witness Frieberg to answer the question turned the scale in this case. Under the instructions given, one of the issues to be determined by the jury was the nature of the warranty made by defendant to plaintiffs when they purchased the hogs. Defendant admitted and testified to the giving of a certain warranty relative to hog cholera. Plaintiffs testified to another and different warranty relative to the same matter. They were all interested witnesses, equally interested in the result, and, with the exception that the weight of numbers was with the plaintiffs, the evidence was evenly balanced. The question with the jury was: Who was giving the correct version of the warranty? If the jury believed Holmes' testimony, they were at liberty to disbelieve and disregard the testimony of all the plaintiffs. If Holmes was telling the truth, the witness Frieberg, who was engaged in the trial of the case as attorney for the plaintiffs, was in the position of putting upon the stand and offering the testimony of witnesses who were unworthy of belief and whom he himself had declared he would not believe under oath. The jury may have understood, from the ruling of the court in refusing to permit Frieberg to contradict the testimony of Holmes, that they were to accept the testimony of Holmes as a verity and disregard the testimony of the plaintiffs. It is the duty of the trial court, of course, to prevent, so far as practicable, the injection of collateral issues into the trial of lawsuits; and, in the matter of impeaching testimony, the number of witnesses that may be used for that purpose and the length of time that may be consumed in that way is left largely to the sound discretion of the trial judge, but this discretion should be exercised in the interest of justice and with a view to ascertaining the truth. While the trial court followed the rule as generally stated in rejecting Frieberg's testimony, we believe that, under all the circumstances existing and surrounding the trial, an

exception should have been made in this case, and the witness should have been allowed to answer the question.

The judgment and order appealed from are reversed, and a new trial awarded.