CITY OF DICKINSON, Plaintiff
and Appellee,

v.

Richard W. MUELLER, Defendant
and Appellant.

Cr. No. 596.

Supreme Court of North Dakota.

Dec. 19, 1977.

James D. Geyer of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant and appellant.

Maurice R. Hunke, City Atty., Dickinson, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

Richard W. Mueller appeals from a Stark County District Court judgment of conviction based on a verdict of a jury which found him guilty of selling an alcoholic beverage to a person under twenty-one years of age, in violation of an ordinance of the City of Dickinson.

The major issue in this case is whether or not knowledge of the person's age by the seller is an essential element of the offense of selling an alcoholic beverage to a person under 21 years of age.

There is really no dispute as to the essential facts in this case. Mueller is the owner and manager of the Paragon Bowl which includes the El Patio Bar. He held a liquor license issued by the City of Dickinson which was in effect on November 16, 1976. At approximately 5:30 in the afternoon of that day, Mr. Quinn Diede, a person under 21 years of age, came into the bar with a friend and ordered a tap beer. Mueller served both men and was paid by Diede. Shortly thereafter, two policemen entered the bar on a routine check, asked Diede his age and asked to see some identification. Diede gave a fictitious birth date and said he had no identification papers with him. The two policemen then left to check on Diede's birth date. After verifying that Diede was under 21 years of age, the police officers reentered the bar. They then cited Diede for being on the premises and cited Mueller for violation of Section 3–12 of the City of Dickinson Code. That section reads:

"Sec. 3–12. Sale to certain persons.

"No licensee under this chapter nor any of his agents, servants or employees shall sell, serve or dispense in any manner any alcoholic beverage to any habitual drunkard, intoxicated person, incompetent person under guardianship or to any person under twenty-one years of age. No such licensee shall permit any of such persons to be furnished with any type of alcoholic beverage on the premises for which such license is granted.

"Whosoever shall in any way procure or furnish any alcoholic beverage for the use of any person named in this section shall be deemed to have sold the same to such person and to have violated the terms and conditions of this section. (Ord. No. 396.)"

A municipal court trial was held on January 6, 1977. Mueller was found guilty of violating Section 3–12 of the City Code, and was fined $100. He appealed this conviction to the Stark County District Court where a jury trial was held on March 21, 1977. The jury returned a verdict of guilty and the court imposed a fine of $300. Mueller filed a motion for a new trial which was denied, and final judgment was entered on May 9, 1977. It is from this judgment that he appeals to this court.

Mueller's first contention is that "willfulness" is an element of the offense of serving an alcoholic beverage to a person under 21 years of age under the ordinances of the City of Dickinson. He asserts that to be guilty of the offense one must know that the person served is under 21 years of age. He argues that the City did not prove that he knew that the person served in this case was under 21 years of age, and that therefore the City failed to prove its case.

Mueller's argument that "willfulness" is an element of the offense charged, is based upon two premises.

His first premise is that "willfulness" is an element of the offense when it is charged under state law. Section 5–02–06, N.D.C.C., which prohibits the sale of alcoholic beverages to persons under 21 years of age, reads:

"Except as permitted in this section, any licensee who dispenses alcoholic beverages to a person under twenty-one years of age, or who permits such a person to remain on the licensed premises while alcoholic beverages are being sold or displayed, is guilty of a class A misdemeanor, subject to the provisions of sections 5–01–08, 5–01–08.1, and 5–01–08.2.
. . . "

He argues that since no culpability requirement is set out in Section 5–02–06, N.D.C.C., that Section 12.1–02–02(2), North Dakota Criminal Code, requires that "willfulness" be read into Section 5–02–06, N.D.C.C. through the term "willfully". Section 12.1–02–02(2), N.D.C.C., reads:

"2. If a statute or regulation thereunder defining a crime does not specify any culpability and does not provide explicitly that a person may be guilty without culpability, the culpability that is required is willfully."

Mueller's second premise is that if "willfulness" is required to be proved to obtain a conviction under Section 5–02–06, N.D.C.C., then "willfulness" must also be charged and proved to secure a conviction under the city ordinance. In support of this contention, he relies on Section 12.1–01–05, N.D.C.C., which reads:

"No offense defined in this title or elsewhere by law shall be superseded by any city ordinance, or city home rule charter, or by an ordinance adopted pursuant to such a charter, and all such offense definitions shall have full force and effect within the territorial limits and other jurisdiction of home rule cities. This section shall not preclude any city from enacting any ordinance containing penal language when otherwise authorized to do so by law."

Relative to the first premise and pertinent for the determination of the meaning of the term "willfully" under state law are subsections a, b, c, and e, of Section 12.1–02–02(1), N.D.C.C.

"1. For the purposes of this title, a person engages in conduct:

a. 'Intentionally' if, when he engages in the conduct, it is his purpose to do so.

b. 'Knowingly' if, when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so.

c. 'Recklessly' if he engages in the conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct, except that, as provided in section 12.1–04–02, awareness of the risk is not required where its absence is due to self-induced intoxication.

\*　　\*　　\*　　\*　　\*　　\*

e. 'Willfully' if he engages in the conduct intentionally, knowingly, or recklessly."

Section 12.1–02–02(2), N.D.C.C., must be read in light of the introductory language of Section 12.1–02–02(1), which reads:

"1. For the purposes of this title,
. . . "

■ We hold that Section 12.1–02–02(2), applies only to the offenses or crimes described in Title 12.1, N.D.C.C., and therefore does not apply to Section 5–02–06, N.D.C.C. That disposes of the first premise.

■ Now, let us consider the second premise, which apparently is that because of Section 12.1–01–05, N.D.C.C., no offense defined in Title 12.1, N.D.C.C., or elsewhere in the Code, may be superseded by any city ordinance. The answer is that the ordinance does not supersede any offense. As we construe 12.1–02–02(2) as applying only to offenses described in Title 12.1, N.D.C.C., and as Section 5–02–06, N.D.C.C., contains

no language indicating that "willfulness" must be shown to secure a conviction thereunder, we find no conflict between the city ordinance involved in this case and state law. In our view, neither of the offenses require proof of "willfulness".

■ The last sentence of Section 12.1–01–05, N.D.C.C., permits cities to enact ordinances containing penal language when authorized by law. Section 40–05–01, N.D.C.C., sets out the powers of all municipalities. Section 40–05–01(29), in pertinent part, reads:

"The governing body of a municipality shall have the power:

\*   \*   \*   \*   \*   \*

29. *Alcoholic beverages.* To regulate the use and to regulate and license the sale of alcoholic beverages subject to the provisions contained in title 5, Alcoholic Beverages;"

Under that provision, the City of Dickinson had the authority to regulate the use of alcoholic beverages, subject to the provisions contained in Article 5. Section 40–05–06, subd. 1, N.D.C.C., is applicable to the ordinance in issue here. It reads:

"1. Except as provided in subsections 2 and 3, the fine or penalty for the violation of any ordinance, resolution, or regulation of a city shall not exceed five hundred dollars, and the imprisonment shall not exceed thirty days for one offense."

■ Under that provision, the City of Dickinson was authorized to enact an ordinance containing penal language. No contention has been made that the penalty imposed by the ordinance exceeds the limit authorized by state law or that the sentence actually ordered by the court exceeded the limits prescribed by state law or the city ordinance.

We are not saying that willfulness, the state of mind involved in the doing of an act willfully as opposed to an act done under coercion, may not under some circumstances be material. This latter meaning of the word willfulness is not at issue in this case.

We conclude this discussion with the thought that if Section 31–11–03(2), N.D.C.C., has any valid application to any offense which imposes a penalty, it should apply to city ordinances regulating the sale of alcoholic beverages. It reads:

"All presumptions other than those set forth in section 31–11–02 are satisfactory if uncontradicted. They are denominated disputable presumptions and may be contradicted by other evidence. The following are of that kind:

\*   \*   \*   \*   \*   \*

2. That an unlawful act was done with an unlawful intent."

The determination that willfulness as Mueller describes it in his arguments herein is not an element of Section 3–12 of the City Code of Dickinson, also disposes of some of the other issues raised by Mueller on this appeal.

■ Mueller contends that the trial court improperly instructed the jury on the issue of willfulness. He states that the complaint uses the word "willfully" and that this complaint was read to the jury twice. However, in listing the essential elements of the offense, the trial court did not include the element of willfulness. He argues from this instruction that the only reasonable conclusion the jury could reach was that willfulness was not required to be proved as part of the offense. As willfulness is not an element of the offense and therefore need not be proved, we find no error in the trial court's instructions to the jury in this respect. The only possible confusion which could have resulted from these instructions was that the jury may have been lead to believe that willfulness was an essential element of the offense. As this could only have worked in Mueller's favor, we find no prejudicial error.

Mueller also contends that the verdict is contrary to the weight of the evidence. This argument is based on his belief that the element of willfulness was not proved. Since willfulness is not an element of the offense charged in this case, that contention is also without merit.

In this case, the facts comprising the essential elements needed to secure a conviction under Section 3–12 of the City of Dickinson Code, are not in dispute. The facts are that Mueller sold an alcoholic beverage to Diede and Diede was at that time under the age of twenty-one. Mueller's defense in the district court was based on the argument that Mueller did not know Diede was under twenty-one years of age and that therefore he did not willfully sell to a person under the age of twenty-one. Since we have held that willfulness is not an element of the offense described under Section 3–12 of the City of Dickinson Code, no essential element of the offense is in dispute.

■ Mueller raises several issues concerning the admissibility of certain evidence. Without determining whether or not the trial court erred in ruling on those issues, or whether or not error occurred that was not objected to, we find that, even if error was committed, it was harmless error.

Rule 52(a), N.D.R.Crim.P., defines harmless error.

"(a) Harmless Error.

Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

The comments to that rule state in relevant part:

"Subdivision (a) provides that any error, defect, irregularity or variance that does not affect substantial rights of an accused shall be disregarded. To determine whether error affecting substantial rights of the defendant has been committed, the entire record must be considered and the probable effect of the error determined in the light of all the evidence."

Rule 52(b), N.D.R.Crim.P., defines obvious error.

"(b) Obvious Error.

Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

In *State v. Allen,* 237 N.W.2d 154 (N.D. 1975), in discussing harmless and obvious error, we said:

"In our review of trial court error, we are guided by Rule 52, N.D.R.Crim.P., which defines 'harmless' and 'obvious' error. As an appellate court, we disregard error which does not affect substantial rights (harmless error), while we must consider errors objected to at trial that were prejudicial (reversible error) and errors 'so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time' (obvious error). Commentary, Rule 52, N.D.R.Crim.P. Rule 52 reflects our judicial statements that a defendant is entitled to a fair trial but not necessarily to a perfect trial. *State v. Marmon,* 154 N.W.2d 55, 64 (N.D.1967); *State v. Manning,* 134 N.W.2d 91, 99 (N.D.1965).

"We must consider the entire record and the probable effect of the actions alleged to be error in light of all the evidence in order to determine whether substantial rights were affected. *State v. Johnson,* 231 N.W.2d 180, 185 (N.D. 1975). In so doing, we are cognizant that among the material factors to consider is 'the relation of the error asserted to casting the balance for decision on the case as a whole.' *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). . . . " 237 N.W.2d at 162.

The errors alleged here do not involve Mueller's constitutional rights so it must appear that prejudice occurred, that substantial injury resulted to his case, and that a different decision probably would have resulted absent the errors, before we will reverse the jury's verdict. Considering the entire record, it cannot be said that prejudice or substantial injury resulted to Mueller's case. Even absent all the alleged errors, it is not probable that a different decision would have resulted. In that none of the facts comprising the essential elements of the offense charged were in dispute, a different decision was not only improbable, but in reality, impossible.

There is still one issue raised by Mueller that must be discussed. That issue is whether or not it was prejudicial error for the prosecution to inform the district court at the sentencing hearing that two criminal charges for liquor violations were pending against Mueller's employees.

Mueller contends that nothing in Rule 32 of the North Dakota Rules of Criminal Procedure, nor in Chapter 12.1–32 of the North Dakota Criminal Code, contains any authorization for the city attorney's reference to pending charges.

We disagree. The last sentence of Rule 32(a)(1), N.D.R.Crim.P., states:

"The prosecution shall be given an opportunity to be heard on any matter material to the imposition of sentence."

Rule 32(c)(2), N.D.R.Crim.P., deals with what a presentence report may contain. It reads:

"(c) Presentence Investigation.

\*     \*     \*     \*     \*     \*

(2) Report.

The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court."

We think this rule is broad enough to include criminal charges that are pending against the defendant or his employees in conjunction with other liquor license violations.

This question of what information may be raised at a sentencing hearing was discussed at great length in *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). In that case, the defendant was convicted of murder and the jury recommended a life sentence. Notwithstanding that recommendation, the judge, at the sentencing hearing, sentenced the defendant to death. At the sentencing hearing the judge referred to 30 other burglaries in which the defendant was allegedly involved, although the defendant had not been convicted of any of those burglaries. The accuracy of the judge's information was not challenged by the defendant. The United States Supreme Court, in discussing what is admissible at a sentencing hearing, said:

"In addition to the historical basis for different evidentiary rules governing trial and sentencing procedures there are sound practical reasons for the distinction. In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged. These rules rest in part on a necessity to prevent a time-consuming and confusing trial of collateral issues. They were also designed to prevent tribunals concerned solely with the issue of guilt of a particular offense from being influenced to convict for that offense by evidence that the defendant had habitually engaged in other misconduct. A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." *Williams v. New York, supra,* 337 U.S. 241, 246–247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337, 1342.

The United States Supreme Court went on to affirm the sentence.

In *Gregg v. United States,* 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969), the United States Supreme Court dealt with a question involving a presentence report. The precise issue in that case involved the question of when a judge could see a presentence report, but the court also did comment on the contents of presentence reports. The presentence report in that case contained information that several warrants were pending against the defendant for robbery. In discussing the contents of presentence reports, the Supreme Court said:

"There are no formal limitations on their contents, and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged. . . ." *Gregg v. United States, supra,* 394 U.S. 489, 492, 89 S.Ct. 1134, 1136, 22 L.Ed.2d 442, 446.

The question of what information is admissible at a sentencing hearing was also discussed in *United States v. Doyle,* 348 F.2d 715 (2nd Cir. 1965). In that case the defendant pleaded guilty to a count charging the use of the mails to sell 50 unregistered shares of stock. The defendant was sentenced to three years imprisonment with execution suspended after serving three months and probation for a year. The defendant questioned the propriety of raising certain information at a sentencing hearing. The Second Circuit Court of Appeals responded to that argument in the following manner.

"The aim of the sentencing court is to acquire a thorough acquaintance with the character and history of the man before it. Its synopsis should include the unfavorable, as well as the favorable, data, and few things could be so relevant as other criminal activity of the defendant, particularly activity closely related to the crime at hand. Counsel suggests that although a 'criminal record' may be considered, crimes not passed on by a court are beyond the pale, but we see nothing to warrant this distinction. *Williams v. People of State of New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

Of necessity, much of the information garnered by the probation officer will be hearsay and will doubtless be discounted accordingly, but the very object of the process is scope and the defendant is always guarded by the statutory maximum. To argue that the presumption of innocence is affronted by considering unproved criminal activity is as implausible as taking the double jeopardy clause to bar reference to past convictions." *United States v. Doyle, supra,* 348 F.2d 721.

In *United States v. Weston,* 448 F.2d 626 (1971), the Ninth Circuit Court of Appeals in a two to one decision remanded a case for resentencing where the trial court, after considering a presentence report which contained an allegation by one of the narcotics agents that they believed the defendant to be the chief supplier of heroin in the Washington area sentenced the defendant to 20 years imprisonment, after first indicating that the minimum mandatory sentence of five years would be appropriate.

We think that, notwithstanding the remand, what the court said about the rule in *Williams,* after saying that *"Williams* is still good law", is pertinent.

"Two arguments can be made in support of the proposition that the court properly relied upon the report. The first is that *Williams v. New York* permits it. A number of courts, including this court, have frequently cited *Williams* for the general proposition that evidence of other criminal conduct not resulting in a conviction may be considered in imposing sentence. We have done so a number of times: *See United States v. English,* 9 Cir., 1970, 421 F.2d 133 (dictum); *Austin v. United States,* 9 Cir., 1969, 408 F.2d 808; *Ward v. California,* 9 Cir., 1959, 269 F.2d 906; *Taylor v. United States,* 9 Cir., 1950, 179 F.2d 640. None, however, is inconsistent in its actual holding with the result we reach here. Other circuits have done the same. *See Jones v. United States,* 1962, 113 U.S.App.D.C. 233, 307 F.2d 190; *United States v. Doyle,* 2 Cir., 1965, 348 F.2d 715, 720–722; *United States v. Cifarelli,* 2 Cir., 1968, 401 F.2d

512, 514; *United States v. Marcello,* 5 Cir., 1970, 423 F.2d 993, 1013; *United States v. Onesti,* 7 Cir., 1969, 411 F.2d 783; *United States ex rel. Long v. Pate,* 7 Cir., 1969, 418 F.2d 1028. We would not repudiate this rule if we could. We do not desire to transform the sentencing process into a second trial, and we believe that other criminal conduct may properly be considered, even though the defendant was never charged with it or convicted of it. Its relevance to the problem before the judge, 'what sort of person is this defendant, and what sort of sentence should she receive?' is apparent. But that does not solve our present problem. Here the other criminal conduct charged was very serious, and the factual basis for believing the charge was almost nil. It rested upon only two things: the opinion of unidentified personnel in the Bureau of Narcotics and Dangerous Drugs, and the unsworn statement of one agent that an informer had given him some information lending partial support to the charge." *United States v. Weston, supra,* 448 F.2d 633.

*See also Collins v. Buchkoe,* 493 F.2d 343 (6th Cir. 1974); and *United States v. Metz,* 470 F.2d 1140 (3d Cir. 1972).

■ We conclude from these cases that it is constitutionally permissible for a judge to consider pending charges as a factor in his sentencing decision, notwithstanding what we said in *State v. Smith,* 238 N.W.2d 662 (N.D.1976). What we say here today does not affect the result of the appeal in *State v. Smith* in any way, but does clarify the law stated therein.

In *People v. Potts,* 55 Mich.App. 622, 223 N.W.2d 96 (1974), the case referred to in *State v. Smith, supra,* the Michigan court upheld a sentence wherein the trial court considered two criminal charges that were pending trial. We quote therefrom:

"In order to properly designate punishment for an individual, which should indeed be individualized, we feel that the trial judge should have at hand the broadest possible accurate information. In the present case no denial was made of the pending charges, and there is no showing that the trial court relied upon them. Therefore, as no error has been presented, there is no merit in defendant's assertion that the sentence should be vacated." *People v. Potts, supra,* 223 N.W.2d at 106.

It would appear to us from a further reading of *Potts* that what the Michigan court was saying is that a sentencing judge may consider pending criminal charges, but that once the defendant has denied the charges, that the court thereafter could no longer consider them unless it were presented with information establishing the validity of the charges.

In the instant case, the charges were never denied; accordingly, not even the rule in *Potts* would prohibit their consideration in this case.

■ It should also be noted that the Rules of Evidence which apply to the criminal trial itself do not apply, except with respect to privileges, to sentencing proceedings. Rule 1101(d)(3), North Dakota Rules of Evidence. Therefore, evidence which may not be admissible at the actual trial, may be admissible at a sentencing hearing.

We hold that the reference to the pending charges in this case was not error. In any event, it does not appear to us from the sentence that was actually rendered, that the judge was overly impressed by the reference to the arrests. The sentence merely imposed a fine of $300; whereas the City Code permitted the imposition of a fine not exceeding $500, or imprisonment not exceeding 30 days, or both.

The judgment of the district court is therefore affirmed.

SAND, PAULSON, PEDERSON and VOGEL, JJ., concur.