**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Mary Ann FOLK, Defendant and Appellant.**

**Cr. Nos. 664, 667.**

Supreme Court of North Dakota.

April 30, 1979.

Charles J. Gilje, State's Atty., Jamestown, for plaintiff and appellee.

Mackenzie & Jungroth, Jamestown, for defendant and appellant; argued by William A. Mackenzie, Jamestown.

PEDERSON, Justice.

Although Mary Folk had entered a plea of not guilty, she did not dispute the State's allegation that on two separate occasions she sold controlled substances to special agents of the Attorney General's Drug Enforcement Unit. On May 2, 1978, for $50.00, she sold two quarters of crystal, methamphetamine (§ 19–03.1–07, Schedule II (4)(b), NDCC) to Gerald Kemmet. On May 17, 1978, she sold five bags of marijuana (§ 19–03.1–05, Schedule I (4)(m), NDCC) to Gerald Kemmet and Daniel Smith for $250.00. In spite of Mary's defense of entrapment, the jury returned verdicts of guilty on both charges. On her appeal, Mary claims error in the instructions, in the admission of hearsay evidence, and in limiting impeachment testimony. We find no error. The convictions are affirmed.

From his opening statement, through the trial, and on this appeal, counsel for Mary acknowledges that the burden of proving entrapment is on the defense. This court so held in State v. Pfister, 264 N.W.2d 694 (N.D.1978), and we are not reexamining that issue now. Also, in Pfister it was held that entrapment is a question for the jury (in a jury trial) unless there is no dispute as to the facts or the inferences to be drawn from them. Mary makes no claim now that there was entrapment as a matter of law in this case.[1] We do not decide whether Mary could have made the entrapment issue a question of law—she did not do so. Pfister also concluded that the North Dakota entrapment statute (§ 12.1–05–11, NDCC) adopted the "objective test." This court, in State v. Mees, 272 N.W.2d 284, 288 (N.D. 1978), commented that it would be more descriptive to use the phrase "normal law-abiding person test."[2] Certainly all "subjectivity" has not been eliminated by the adoption of the "objective" test. When the "focus" is upon the police conduct, there is room for as much subjective, personal-value

1. For an interesting discussion of how entrapment may be a question of law when predisposition of defendant is an issue, see State v. Ford, 276 N.W.2d 178 (Minn.1979). See also State v. Williams, 84 S.D. 547, 173 N.W.2d 889 (1970).

2. Professor Roger Park, University of Minnesota Law School, has authored a comprehensive analysis of The Entrapment Controversy, 60 Minn.L.Rev. 163 (1976), in which he suggests that the type of entrapment defense we have in North Dakota should be referred to as "The Hypothetical-Person Defense." See also Bruce Quick, Criminal Law—Entrapment—If Defendant is Predisposed to Commit the Offense, No Defense of Entrapment Exists, Even if Government Agent Supplies the Contraband, 53 N.D.L. Rev. 284 (1976); Kamisar et al., Modern Criminal Procedure (4th ed. 1978 Supp.) at 119.

judgment as when the "focus" is upon a defendant's state of mind.

In the case of *State v. Currie*, 13 N.D. 655, 102 N.W. 875, 877, 112 Am.St.Rep. 687, 69 L.R.A. 405 (1905), this court said that a "feigned complicity of a detective in the crime should not be a shield to the defendant." Whether the court was judicially adopting entrapment as a defense,[3] or had concluded that there was a common-law entrapment defense,[4] or a due-process entrapment constitutional defense[5] is of no great concern because we now have a statutory entrapment defense, § 12.1–05–11, NDCC, adopted as § 5, Ch. 116, S.L. 1973.

At trial Kemmet and Smith referred to themselves as undercover narcotics agents. During their investigation, Kemmet and Smith relied upon a "paid confidential informer," apparently retained by the Jamestown Police Department and the Stutsman County Sheriff, but also paid a contingent fee by the State. The informer's name was Ronald Bosco, also known as Bomino Geje. Bosco's function for the police was to establish contact with the drug culture in Jamestown. The "cover" of confidentiality had been "blown" before the trial of this case and before Bosco was called as a defense witness by Mary. Bosco testified concerning his acquaintance with Mary and his efforts to set up the meetings between Mary and the special agents so that they could make the drug purchases from her. Bosco was not cross-examined by the prosecutor.

### Entrapment Instructions

■ Mary voluntarily took the stand to testify in her own behalf. There was no significant difference in Bosco's testimony and in Mary's testimony as to the relationship between them, nor in their descriptions of the nature of the influence exerted by Bosco over Mary. The State produced no conflicting rebuttal testimony. Clearly, there were sufficient facts and inferences present to warrant an instruction to the jury on the defense of entrapment. The following instruction was given:

"Entrapment is an affirmative defense that the defendant was entrapped into committing the offense. Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment. 'Law enforcement agent,' for this purpose includes personnel of federal and local law enforcement agencies as well as state agencies, and any person cooperating with such an agency. You are instructed that the informant, known to the Defendant as Ronald Bosco, was a law enforcement agent as defined above.

"The affirmative defense of entrapment must be proved by the defendant by a preponderance of the evidence. By 'preponderance of the evidence' is meant that such evidence, when considered and compared with that opposed to it, is more persuasive and convinces you that what the defendant seeks to prove is more likely true than not true.

"If the defendant has proved the affirmative defense of entrapment, you should return a verdict of 'Not Guilty.'

"The fact that the defendant may not prove the defense of entrapment does not

---

**3.** E. g., Alaska reportedly judicially adopted entrapment as a defense in *Grossman v. State*, 457 P.2d 226 (Alaska 1969); Michigan did so in *People v. Turner*, 390 Mich. 7, 210 N.W.2d 336 (1973); Iowa in *State v. Mullen*, 216 N.W.2d 375 (Iowa 1974); and California in *People v. Barraza*, 23 Cal.3d 675, 153 Cal.Rptr. 459, 591 P.2d 947 (1979).

**4.** "The defense of entrapment was not known at the common law . . . ." *State v. Good*, 110 Ohio App. 415, 165 N.E.2d 28 (1960). See

also 21 Am.Jur.2d Criminal Law, § 143, at 212. But see Anno.—Crime—Entrapment, 18 ALR 146, and Anno: Burglary—Entry With Consent, 93 A.L.R.2d 531, Part V, at 554.

**5.** See *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). For a state-by-state listing of early entrapment cases see Comment S.W. L.J. 456, 465 (1955).

alter the fact that the prosecution must prove all of the elements of the offense beyond a reasonable doubt before you can find the defendant guilty of the offense."

Mary argues that the words "normally law-abiding persons" which are found in § 12.1–05–11, NDCC,[6] should not have been used in the instruction, first of all because "the language is not clear to lay-jurors," and, second, because defendants in narcotic cases who wish to raise the entrapment defense "almost always" have to take the stand and admit to using controlled substances, which opens the door to a "devastating argument" by the prosecutor that the defendant has admitted that she is not a "normally law-abiding person."

■■ Only when examining the theoretical legal nuances and subtleties do the words "normally law-abiding persons" appear to be ambiguous. As in applying the "reasonable-man" yardstick, lawyers and judges appear to encounter more, not less, difficulty than lay jurors. We see no chance that any instruction, no matter how artfully drawn, will prevent lay jurors from "focusing" *some attention* to evidence introduced by the defendant herself that relates to her willingness or predisposition to commit the very crime charged. *Pfister, supra*, stands for the proposition that neither the evidence offered by the prosecutor nor the instructions given by the court should direct the attention of the jurors to a focus upon the defendant's predisposition. The law does not prevent defendants themselves from doing so. Mary's citations of Alaska cases are not persuasive on this question.

In addition to a requested instruction based upon § 12.1–05–11, omitting the phrase "normally law-abiding persons," Mary requested instructions which she extracted from the law proposed by writers of concurring and dissenting opinions in *Sher-*

*man v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), and *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). It must be remembered that in federal courts a requirement to apply objective tests has been rejected.

■ An instruction on entrapment under present North Dakota law, which would omit reference to "law-abiding persons" when evaluating the "persuasion or other means utilized," might be erroneous. Instructions which fairly inform the jury of the law that must be applied is all that is required. A court need not give instructions in the specific language requested by the defendant. See *Wasem v. Laskowski*, 274 N.W.2d 219, 226 (N.D.1979), and *Nokota Feeds, Inc. v. State Bank of Lakota*, 210 N.W.2d 182 (N.D.1973). It was not error for the court to reject the instructions that were requested.

■ If entrapment under our statute fails to provide an adequate defense in narcotics cases, the remedy lies with the legislature, not with this court. No doubt a meritorious case can be made for the proposition that a defense which diverts the juror's attention away from the defendant and onto the police is designed to benefit a professional criminal, but is a detriment to a beginner who may be gullible to the wiles of a worldly and conniving, confidence-type, undercover agent. Professor Park (see footnote 1, *supra*) says "the hypothetical-person test aids the chronic offender at the expense of the nondisposed novice."

### Hearsay Evidence

■ During the prosecutor's examination of Special Agent Kemmet, the following discussion occurred:

"Q. Would you outline to the Court and to the jury who was all present at

---

**6.** Section 12.1–05–11, NDCC, provides:

"1. It is an affirmative defense that the defendant was entrapped into committing the offense.

"2. Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons

to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

"3. In this section 'law enforcement agent' includes personnel of federal and local law enforcement agencies as well as state agencies, and any person cooperating with such an agency."

that time and the circumstances under which you were introduced to Miss Folk?

"A. On May 2nd at approximately 8:08 p. m. in the evening, the confidential or the informant had contacted me prior to that day and I had arrived that day and we were waiting at his house for Miss Folk to arrive. Approximately 8:08 that evening there was a knock at the door. He answered the door. She came in. He introduced me to her. At that point he left the room and I asked Miss Folk if she still had crystal or methamphetamine for sale and she indicated yes.

"Q. If she still had, why did you ask it in that particular phraseology?

"A. Because the informant had told me that she had been selling.

MR. MACKENZIE: Objection, hearsay.

"THE COURT: Continue as you said—excuse me. Just continue on before I interrupted you."

At this point in the trial Mary had not opened the door to the issue of her reputation, predisposition or nondisposition, or past criminal activities. The objection should have been sustained and, if there had been an appropriate request at that time, the answer should have been stricken and there should have been an admonishment to the jury to disregard the hearsay comment. Counsel did not pursue the matter, and did not move for a mistrial when the court failed to recognize his objection or act upon it. The subject was never again raised except insofar as Mary herself interjected it in general into the case by testifying that she had not previously made other sales. Mary's cross-examination was not aggressive and did no harm to her cause in this regard.

█ Without concluding that, in all like situations, evidence of this nature would be excludable under the hearsay rules of evidence, Article VIII, North Dakota Rules of Evidence, we conclude that reversible error may not be predicated upon events where no substantial rights of the defendant are affected. See Rule 103, NDREv. See also the rule on harmless error in criminal cases,

Rule 52(a), North Dakota Rules of Criminal Procedure. The error was not fundamental and we believe that it was harmless beyond a reasonable doubt. See *City of Dickinson v. Mueller*, 261 N.W.2d 787, 791 (N.D.1977).

### Limiting Impeachment Testimony

While defense witness Bosco was testifying on direct examination, without objection from the State, he denied that while he was in Jamestown he had violated any laws, used any controlled substances, or supplied or sold any drugs. Mary thereafter testified that she had observed Bosco smoking controlled substances and that he offered controlled substances to her two or three times. When defense counsel next proposed to call Curt Carlson as a witness, the prosecutor, in chambers, moved on the basis of *State v. Larson*, 253 N.W.2d 433 (N.D. 1977), to prohibit further impeachment of Bosco on collateral matters.

*State v. Larson, supra*, 253 N.W.2d at 436, said that the rule had long been that where a witness is cross-examined on a collateral issue, the examiner is bound by the answer given and cannot thereafter introduce testimony of a third party for impeachment purposes. In a footnote it was stated: "For the scope of permissible inquiry to impeach a witness, see Rules 607–613, N.D.R.Ev."

Rule 607, NDREv, provides:

"The credibility of a witness may be attacked by any party, including the party calling him."

This rule was adopted by this court on December 1, 1976, some five to six months before *State v. Larson, supra*, was decided. The comments by the Procedure Committee were, in effect, adopted by this court along with the rules. Citing *State v. Hilling*, 219 N.W.2d 164 (N.D.1974), which said that the "voucher rule" should be abandoned, the Committee said: "This rule [Rule 607, NDREv] does away with the prohibition against impeaching one's own witness."

When, during a lengthy discussion of the matter, the trial court learned that Mary proposed to call Curt Carlson, Susan Gardner and John Gardner for the sole purpose

of further collateral attacks to impeach Bosco, it ruled that to allow all three additional witnesses would cause confusion for the jury. The court permitted defendant to select only one additional impeachment witness and directed that the testimony be limited to evidence to contradict Bosco's statements that he had not used or attempted to sell controlled substances.

Mary elected to use Susan Gardner (Peterson) as an impeachment witness. She testified, without objection, that she saw Bosco use controlled substances "quite often" and that he supplied her with marijuana. She was permitted to testify that, in her opinion, Bosco was neither trustworthy nor honest. Her testimony was not discredited during cross-examination. In spite of the court's limitation, Mary called additional witnesses who were asked to express opinions concerning Bosco's reputation. There was no objection by the State, but the witnesses declined to express an opinion.

The only case in which this court has expressed any comment on limiting witnesses is that of *Fuhrman v. Fuhrman*, 254 N.W.2d 97, 101 (N.D.1977). That was a civil case where we said, "ordinarily the court has a broad discretion in limiting the number of witnesses." We referred to the annotation in 21 A.L.R. 335.[7]

■ The South Dakota case of *Johnson v. Ebensen*, 38 S.D. 116, 160 N.W. 847 (1916), also a civil case, stated a general rule which we approve and which applies to our circumstances here:

"It is the duty of the trial court, of course, to prevent, so far as practicable, the injection of collateral issues into the trial of lawsuits; and, in the matter of impeaching testimony, the number of witnesses that may be used for that purpose and the length of time that may be consumed in that way is left largely to the sound discretion of the trial judge, but this discretion should be exercised in the interest of justice and with a view to ascertaining the truth."

In an earlier South Dakota criminal case, *State v. Madison*, 23 S.D. 584, 122 N.W. 647, 649 (1909), it was said that "the impeachment of witnesses is a collateral issue, and therefore it was competent for the court to limit the number of witnesses."

■ We conclude that, generally, in criminal prosecutions where the character or reputation of a prosecution witness is relevant and material, the number of impeachment witnesses permitted to testify on that subject may be reasonably limited by the exercise of sound discretion by the trial court. It logically follows that, by the exercise of sound discretion, the trial court may limit the number of witnesses used to impeach one's own witnesses.

In reviewing trial court discretionary acts, we apply the standard of abuse of discretion. Mary argues that in a jurisdiction that has adopted the "objective theory of entrapment," such as North Dakota, where the "focus" is on the actions of the law enforcement agents, any limitation of impeachment witnesses is an abuse of discretion. That may very well be true if by "focus" on the acts of police it is meant that the impeachment of police witnesses becomes the main thrust of the action and the guilt or innocence of the defendant becomes the collateral issue. We know of no case that has so held and we decline to be the first.

In *On Lee v. United States*, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), the United States Supreme Court acknowledged that the use of informers, accessories, accomplices, false friends, or any other betrayals is "dirty business" and may raise serious questions of credibility and, to that extent, the defendant is entitled to broad latitude to probe credibility. That court also said that departures from "primary evidentiary criteria" must be justified by some strong social policy.

7. See additional annotations in 48 A.L.R. 947, 948; 5 A.L.R.3d 238, 250; and 17 A.L.R.3d 327, 363.

We expressed agreement with a statement of social policy from *Sorrells v. United States*, 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932), in *State v. Goeller*, 264 N.W.2d 472, 475 (N.D.1978), when we said:

"'Artifice and stratagem may be employed to catch those engaged in criminal enterprises.'"

 If there had not been general agreement between Mary's description of Bosco's persuasion tactics and the description given by Bosco himself, perhaps the limitation imposed by the trial court might be considered abuse of discretion. All the proof in the world that Bosco lied on the witness stand about his own criminal activity is of little concern here, where Mary's own testimony was supportive of his description of the persuasion he used upon her.

The persuasive activity by Bosco was nowhere described as outrageous or unconscionable. The legislature has given its approval of reasonable underground narcotics enforcement activities. See § 54–12–14, NDCC. See also H.B. 1048, 46th Legislative Assembly, where the 1979 Legislature supported underground narcotics activity with a $600,000 appropriation.

The legislature has prohibited activities that amount to "a substantial step toward commission of the crime," § 12.1–06–01(1), NDCC. It has made it illegal to provide "substantial assistance to a person intending to commit a felony," § 12.1–06–02, NDCC. One who "commands, induces, entreats, or otherwise attempts to persuade another person to commit a particular felony" is guilty of criminal solicitation. Section 12.1–06–03, NDCC. All of these prohibitions resulted from the same Legislative Council interim study committee that drafted and recommended the statute on the entrapment defense. The legislative history provides little from which this court can extract legislative intent.

It is apparent that the legislature intended that these prohibitions would deter police misconduct. It is possible that an informer's conduct may be punishable as criminal solicitation, for example, and yet not convince a jury that the conduct constitutes entrapment. Obviously, the legislature did not intend to rely solely upon the raising of entrapment as a defense to police the police.

For the reasons stated herein, we affirm the convictions of Mary Folk for selling controlled substances in violation of §§ 19–03.1–07(4)(b) and 19–03.1–05(4)(m), NDCC. Use of the phrase "normally law-abiding persons" is the crux of the statutory entrapment defense and was correctly applied by the trial judge in his instructions to the jury. The objection to the admission of hearsay evidence was not sufficiently pursued at trial. The admission of this evidence was, in any event, harmless error and did not affect any substantial right of Mary in presenting her case. Finally, we conclude that the trial court properly limited the number of impeachment witnesses in this case.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.